# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

YOSHIRA GONZALEZ,         ]

                   ]

      Plaintiff,        ]

                   ]

 v.                 ]    No. 2:18-CV-

                   ]

PARKER HANNIFIN CORPORATION,  ]

                   ]

      Defendant.      ]

## COMPLAINT

Plaintiff Yoshira Gonzales files her complaint for relief against the defendant for its sex discrimination, race discrimination, and retaliation and avers:

1. The Court is empowered to hear the plaintiff's federal employment discrimination/retaliation claims pursuant to its federal question jurisdiction codified at *28 U.S.C. §1331*. The plaintiff's sex discrimination claims, race discrimination claims, and retaliation claims are premised upon the provisions of Title VII of the 1964 Civil Rights Act, as amended, and as codified at *42 U.S.C. §2000e-2, §2000e-3,* and §*2000e-5*.

1

2. The plaintiff's state law claims are of sex discrimination, race discrimination and retaliation arise out of the same facts and circumstances as her federal employment discrimination claims and are premised upon the provisions of the Tennessee Human Rights Act codified at *T.C.A. §4-21-401(a)*, *T.C.A. §4-21-301(a),* and T.*C.A.* §*4-21-311*. This Court is authorized to hear and decide the plaintiff's state law claims pursuant to it diversity of citizenship jurisdiction codified at *28 U.S.C.* §*1332*.

3. Plaintiff Yosihra Gonzales is a Hispanic female, 27-years-of-age. She resides in Greene County, Tennessee. The plaintiff is a citizen of the State of Tennessee. At the time pertinent to her claims of race, sex, and national origin discrimination, and Title VII retaliation, she was employed by Parker-Hannifin at its Greeneville, Tennessee manufacturing facility as a supervisory group leader.

4. Defendant Parker-Hannifin Corporation is a Fortune 250 global manufacturer of motion and control technologies and equipment. It operates dozens of technology and mechanical divisions in the U.S., Europe, Asia, and the Far East. It has world-wide annual sales in excess of $14 Billion. The company's corporate headquarters are located at 6035 Parkland Blvd., Cleveland, OH 44124-4186. The company owns and

2

operates various operating units throughout the United States, including a vehicle hydraulic pump manufacturing plant at 2745 Snappy Ferry Road in Greeneville, TN 37745. The defendant is a citizen of the State of Ohio for purposes of this Court's diversity of citizenship jurisdiction. The defendant company employs thousands of individuals. Its registered agent for service of process is listed as the C T Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

5. At the time she was discriminatorily/realiatorily discharged, the plaintiff was working seven days a week on the 12-hour second shift as a group leader. The plaintiff's group, composed of approximately 25-workers, assembled hydraulic motors on four assembly lines. As a working group leader, the plaintiff had to sometimes "fill-in" on the assembly line for workers who were unexpectedly absent from work.

6. The plaintiff had experienced race discrimination and retaliation when she was working as a temporary employee five years earlier. The plaintiff's mother, who also worked at Parker-Hannifen, had supported another female employee who had alleged that company supervisor Jason Brown had sexually harassed her at work. Harasser Brown was a friend of male supervisor David Glasscock.

7. When it came time to recall laid-off temp employees,

3

Glasscock recalled every temporary worker except the plaintiff. The plaintiff's mother complained to the company's HR Manager Tyler Ennis about the blatant EEOC-related retaliation and the company permanently hired the plaintiff. Since his efforts to keep the plaintiff from working were rebuffed, supervisor Glasscock has harbored retaliatory resentment toward the plaintiff.

8. The plaintiff became pregnant in 2016. As her pregnancy progressed, she developed physical problems including high blood pressure and gestational diabetes. At the end of five months, the plaintiff's physician had an ultrasound performed which revealed that Ms. Gonzales had a weak cervix and needed to take medical leave from work.

9. The plaintiff was hospitalized at Fort Sanders Medical Center in Knoxville and underwent a cerclage to avoid losing her baby. After being released, the plaintiff's ambionic fluid began leaking and she was I was re-hospitalized for nearly two months. The plaintiff's son Julian was born two months prematurely on July 6, 2017.

10. Premature Julian had to be hospitalized for a month at the Children's Hospital in Knoxville. The company allowed the plaintiff to spend only one week with her son. Human Resources Manager Andrea Clarkstone insisted that the plaintiff's FMLA was "over" and that she had

4

to return to work.  The defendant's HR Manager did not explain that the Tennessee Maternity Leave Act allowed the plaintiff to take up to four months off work to care for and bond with her newly born child.  The company's failure to comply with the Tennessee Maternity Leave Act is evidence of its discriminatory and retaliatory animus which became more apparent as it subjected the plaintiff to disparate discipline and discharge for allegedly taking long work breaks.

11. The defendant company allowed workers to take a 15-minute break at 5:30 p.m., a 30 minute lunch break at 7:30 p.m., a 15-minute break at 10:00 p.m., a 15-minute break at midnight, and a 15 minute break at 2:00 a.m.  Workers were not disciplined if their breaks exceeded the authorized break time by a few minutes.

12. At the time the defendant insisted that the plaintiff return to work, the plaintiff did not realize that she was suffering from postpartum depression.  The plaintiff usually walked outside during the 30-minute lunch break and telephoned her sister, who was baby-sitting Julian to inquire about his health.

13. The plaintiff did extend her thirty minutes evening lunch breaks on a few occasions during November 2017. On one occasion, the plaintiff spent time talking on the telephone with off-work supervisor

5

Chanc Jackson because one of the production lines had gone down and employees were idle. That evening the plaintiff was "in charge" of the production line. On another evening, the plaintiff did stay out for several extra minutes because her sister had brought Julian to see her. However, on those days the plaintiff shortened her later evening breaks.

14. No manager or supervisor ever told the plaintiff that she needed to "watch" her lunch break times. The plaintiff was not aware there was any problem with her infrequently exceeding her lunch break time after her child was born until after HR Manager Clarkstone advised her that a "random audit" had revealed that the plaintiff had been taking excessively long breaks. Clarkstone told the plaintiff she was being suspended while the company investigated.

15. On December 6, 2017, the plaintiff reported to the company's HR office for a meeting with Clarkstone, supervisor Jared Adams, and supervisor Chanc Jackson. Clarkstone stated that the plaintiff was being terminated for "being tardy" from lunch eleven times. The plaintiff asked if the company would give her a "second chance." The managers responded "no."

16. The plaintiff was the first employee which the defendant employer terminated for allegedly excessive lunch break tardies without

6

giving her the opportunity to correct her conduct with a "second chance" disciplinary action. Defendant Parker-Hannifin maintained a progressive disciplinary policy which permitted its management to give employees a "second chance" to correct performance/punctuality issues before being discharged.

17. The defendant replaced the plaintiff with a male worker from one of the plaintiff's assembly lines. The plaintiff avers that the defendant discriminated against her because of her female gender, her race and national origin, and in retaliation for her mother's having supported a female co-worker's earlier complaints of sexual harassment. Parker-Hannifin routinely treated its male group leaders better than it treated the plaintiff with regard to discipline. No male group leader was discharged without prior warnings for being tardy from lunch breaks.

18. The plaintiff avers that male Group Leader Nagar Nadim was caught falsifying his time card in order to procure more pay. The company suspended Nadim for two weeks and put him on a performance commitment, but allowed him to continue employment to be a group leader.

19. The plaintiff avers that male Group leader Brandon Holt routinely exceeded 80 hours of absences without adequate excuses - an

7

offense which is supposed to result in termination under the defendant's disciplinary polices. However, Mr. Holt was not suspended or terminated.

20. Value Stream Manager Tom Duchac took other male group leaders who were working at the plant to his house on a Saturday to assist him in moving his personal hot tub. None of the male employees who were clocked-in but who went off premises with Duchac were disciplined.

21. At the same time it was discriminatorily/retaliatorily discharging the plaintiff, Parker-Hannifin permitted white male Josh Griztmaker to take numerous excessive breaks. The company gave Griztmaker a verbal warning and then a written warning but did not discharge him. The defendant gave Gritzmaker at least five "second changes" by the company for taking excessively long work breaks and coming in late from breaks.

22. The defendant never produced any evidence that it had actually conducted a "random audit" of time cards before it suspended and then discharged the plaintiff. The plaintiff is informed and does believe that group leader David Glasscock, who had harbored retaliatory resentment toward the plaintiff and her mother for several years, told one of the employees on the plaintiff's production crew who had wanted to go home when the production line went down in November 2017 to report the

8

plaintiff to HR for taking an "excessive lunch break." At the time, plaintiff Gonzales was talking on her cell phone with supervisor Jackson about the production line breakdown.

23. The plaintiff avers that the defendant's suspending and discharging her for allegedly taking excessive work breaks was pretextual and that the defendant discriminated against her because of her race and sex, and in retaliation for her mother having supported a sexual harassment victim. The defendant's employment discrimination violated the prohibitions of Title VII of the 1964 Civil Rights Act, as amended and the provisions of the Tennessee Human Rights Act, as amended. The defendant's discrimination/retaliation embarrassed and humiliated the plaintiff and caused her to suffer mental distress.

24. The defendant's employment discrimination and retaliation has been willful, deliberate, malicious, in bad faith, and in reckless disregard of the plaintiff's federally protected rights and state law protected rights. As a result of the pretextual and discriminatory/ retaliatory discharge, the plaintiff has sustained lost wages and lost employment benefits. Her enjoyment of life has been diminished and her earning capacity has been impaired.

25. The plaintiff is entitled to an award of compensatory

9

damages from the defendant for its violations of Title VII and the THRA. The plaintiff is entitled to an award of punitive damages from the company for its violations of Title VII. The plaintiff is entitled to an award of lost wages and lost benefits. She is entitled to reinstatement to her former group leader position with commensurate pay increases. Alternately, the plaintiff is entitled to an award of front pay as determined by the Court.

26. The plaintiff filed her charges of Title VII discrimination and retaliation with the EEOC, has received her right-to-sue letter, and has exhausted her administrative remedies.

WHEREFORE, THE PLAINTIFF DEMANDS:

1. Judgment against the defendants for all compensatory damages allowed by Title VII and by 42 U.S.C. §1981a.

2. Judgment against the defendants for all punitive damages allowed by Title VII and 42 U.S.C. §1981a.

3. Judgment for compensatory damages against the defendants for its violations of the THRA in the amount of at least $500,000.00

4. An award of back pay and lost employment benefits under federal law.

5. An award of back pay and lost employment benefits under

10

state law in the amount of at least $300,000.00

    5.  An award of front pay to be determined by the Court.

    7.  A jury to try the plaintiff's claims.

    8.  An award of attorney's fees as allowed by federal law and state law to the plaintiff as the prevailing party.

    9.  Such other relief as will make the plaintiff whole.


Respectfully Submitted,


s/ C. R. DeVault, Jr.
CHARLTON R. DEVAULT, JR.
TN BPR #000428
102 Broad Street
Kingsport, Tennessee
(423) 246-3601

ATTORNEY FOR THE PLAINTIFF

11